# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| TEXTRON INNOVATIONS INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SZ DJI TECHNOLOGY CO., LTD., DJI EUROPE ) <br> B.V., SHENZHEN DAJIANG BAIWANG ) <br> TECHNOLOGY CO. LTD., and IFLIGHT ) <br> TECHNOLOGY COMPANY LTD., ) <br> ) <br> Defendants. ) <br> ) | **Civil Action No. 6:21-cv-00740-ADA** <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS' MOTION FOR LEAVE TO AMEND THEIR ANSWER TO ADD A DEFENSE OF UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT**

# TABLE OF CONTENTS

I. FACTUAL BACKGROUND ........................................................................................... 2

    A. ███████████████████████████████████████████ .......... 2

    B. DJI Sought Identification and Production of Prior Art Papers—During Fact Discovery, Textron Did Not Identify or Produce the Papers ███████ ............ 2

    C. ███████████████████████████████████████████ ...... 3

    D. Textron's Production Includes Prior Art Substantially Similar to Art Textron Does Not Dispute Renders Claims of the '752 Patent Invalid in the IPR ............................................................................................................. 4

    E. DJI Immediately Sought to Amend Its Answer to Add Inequitable Conduct ............................................................................................................. 5

II. LEGAL FRAMEWORK ................................................................................................. 5

III. ARGUMENT .................................................................................................................. 6

    A. DJI Diligently Moved to Amend When the Facts Became Available ................. 6

    B. DJI's Amendments Are Important to Resolve the Parties' Disputes .................. 6

    C. Plaintiff Cannot Reasonably Claim Prejudice .................................................... 9

    D. A Continuation Is Available but Unnecessary .................................................. 10

IV. CONCLUSION .............................................................................................................. 10

## TABLE OF EXHIBITS

| Exhibit | Document Title |
|---|---|
| A | Defendants' Amended Answer and Affirmative Defenses to Textron Innovations Inc.'s Amended Complaint for Patent Infringement |
| B | Excerpts from the Deposition Transcript of Kevin Thomas Christensen (Nov. 17, 2022) |
| C | U.S. Patent No. 9,162,752 ("'752 patent") |
| D | Excerpts from Defendants' First Set of Requests for the Production of Documents (Nos. 1-27) (May 4, 2022) |
| E | Email Correspondence Between Counsel for DJI and Textron |
| F | Excerpts from Defendants' First Set of Interrogatories to Plaintiff Textron Innovations Inc. (Nos. 1-20) (May 13, 2022) |
| G | Excerpts from Plaintiff's Second Supplemental Objections and Responses to Defendants' First Set of Interrogatories (Nos. 1-10) (Nov. 17, 2022) |
| H | Email Correspondence Between Counsel for DJI and Textron |
| I | Jeffrey W. Harding et al., "Development of Modern Control Laws for the AH-64D in Hover/Low Speed Flight," Presented at the American Helicopter Society 62nd Annual Forum, Phoenix, AZ, May 9-11, 2006 |
| J | Jeffrey W. Harding et al., "Optimization and Piloted Simulation Results of the AH-64D Modern Control Laws," Presented at the American Helicopter Society 63rd Annual Forum, Virginia Beach, VA, May 1-3, 2007 |
| K | Excerpts from the Prosecution History of the '752 Patent |
| L | Jay W. Fletcher et al., "UH-60M Upgrade Fly-By-Wire Flight Control Risk Reduction using the RASCAL JUH-60A In-Flight Simulator," Presented at the American Helicopter Society 64th Annual Forum, Montreal, Canada, April 29-May 1, 2008 |

Defendants SZ DJI Technology Co., Ltd., DJI Europe B.V., SZ DJI Baiwang Technology Co. Ltd., and iFlight Technology Company Ltd. (collectively "DJI") respectfully request leave to amend their answer to add an affirmative defense of unenforceability based on newly discovered inequitable conduct. DJI's amended answer with changes in redline is attached as Exhibit A. Back in May, DJI sought identification and production of prior art Textron was aware of and any analysis it had done before filing the '752 patent. For over six months and as recent as November 17, Textron claimed it was only "aware of the references cited on the face" of the '752 patent. But on that same day, DJI deposed the main inventor (who is also Textron's corporate witness for '752 patent topics) and learned that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Plaintiff failed to investigate and produce those papers until *after* the close of fact discovery, depriving Defendants of the ability to amend its pleadings during the scheduled period for doing so.

Among these late-produced papers is one with substantially similar disclosures to the primary reference in a co-pending IPR where Textron did not dispute that the reference renders several claims of the '752 patent invalid, and another that renders claim 13 invalid. Textron failed to disclose these to the Patent Office. Instead, Textron obtained allowance by arguing the prior art of record lacked limitations that are clearly disclosed in the prior art that Textron withheld from the Patent Office. The relevant facts have been within Textron's possession for years. Given these facts, Textron cannot claim prejudice, and no continuance is needed. Leave should be granted.

## I.     FACTUAL BACKGROUND

### A.     ███████████████████████████████████████████

Textron purportedly came up with the design claimed in the '752 patent around 2008. Ex. B (Christensen Dep. Tr.), 142:2-25. ███████████████████████████



███████ Textron did not disclose a single paper to the United States Patent Office despite "extensive" research identifying over 20 papers. Ex. C, [56] (References Cited).

### B.     DJI Sought Identification and Production of Prior Art Papers—During Fact Discovery, Textron Did Not Identify or Produce ███████

At the beginning of fact discovery in May 2022, DJI served interrogatory requests and requests for production, seeking identification of and production of prior art papers related to the '752 patent. For example, DJI served the following requests for production (RFPs):

- RFP No. 9: "All documents and things, including any opinions, communications, or analysis, relating to the novelty, validity, patentability, enforceability, infringement, state-of-the-art or other Prior Art searches, reports, studies, or investigations of the Asserted Patents and/or any Related Patents and Applications."

- RFP No. 11: "All documents and communications concerning any Prior Art known to You related to the Asserted Patents, including but not limited to Prior Art products and/or systems (including but not limited to those identified in Defendants' invalidity contentions), papers, publications, presentations, and any public use, experimental use, offers to sell, manufacture, distribution, or sale of the purported inventions."

Ex. D (First Set of RFPs), 10. Textron agreed to search for responsive material but did not produce any of the papers ▮.

Concerned Textron was not conducting a proper search, DJI met and conferred with Textron on August 12, 2022, including with respect to RFP Nos. 9 and 11. During the meet and confer, the parties discussed the need "to search for an[d] produce any prior art [Textron] obtained through state-of-the-art or prior art searches." Ex. E (Aug. 15, 2022 Email). "DJI suggested that, at a minimum, Textron should search for such documents from the inventors of the asserted patents, their supervisors, and in-house counsel involved in patent prosecution." *Id*. Textron, however, still did not produce ▮.

DJI also served an interrogatory requesting Textron to "identify all Prior Art that Textron was or is currently aware of, including the dates and circumstances of when and how such prior art was discovered, who discovered it, and whether and, if so, to whom such prior art was disclosed." Ex. F (First Set of Interrogatories), 9-10. Plaintiff responded by only stating it was "aware of the references cited on the face of" the '752 patent until this litigation. Ex. G (Textron's Responses to Interrogatories), 13-15. To date, Plaintiff has not supplemented its response.

    C.    **On the Last Day of Discovery, Textron Disclosed** ▮

Textron chose the last day of discovery (November 17, 2022) for the deposition of its '752 patent lead inventor and corporate designee for '752 patent topics, Mr. Kevin Christensen. During this deposition, Mr. Christensen disclosed, for the first time, that Textron ▮

3

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

DJI immediately requested these prior art papers. Ex. H (Email Chain). On Monday, November 21, 2022, Plaintiff "produced the documents identified in Mr. Christensen's deposition," totaling 29 documents, and stated it would "promptly provide a supplemental response to DJI's Interrogatory No. 6." *Id.* As of the filing of this motion, it has still not done so.

**D.   Textron's Production Includes Prior Art Substantially Similar to Art Textron Does Not Dispute Renders Claims of the '752 Patent Invalid in the IPR**

One of the newly-produced prior art papers █████████████████████ ████████████████ contains disclosures substantially similar to those in the primary reference DJI relied on in a co-pending IPR. The main reference in the IPR is a paper by Jeffrey W. Harding et al. presented at the American Helicopter Society 62nd Annual Forum. Ex. I (2006 Harding Reference). Textron did not produce this paper or state that the paper does not exist in

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████ One of those contains substantially similar disclosures and appears to be an updated version of the IPR Harding reference, as it was presented at the same conference the following year (the American Helicopter Society 63rd Annual Forum). Ex. J (2007 Harding Reference). This reference cites the 2006 Harding reference and contains substantially similar disclosures as the 2006 Harding reference that DJI relied on in the IPR. *Compare, e.g.*, Ex. I (2006 Harding Reference),

4

DJI000004353 (disclosing that "mode blending from ACAH to TRC at 12 knots ground speed is automatic" and "[b]elow 1 knot, position hold automatically captures position over the ground"), *with* Ex. J (2007 Harding reference), TEXTRON_0377476 (disclosing that "the system automatically transitions from ACAH to TRC as the aircraft's total ground speed goes below 10 knots" and "[b]elow one knot, position hold automatically captures position over the ground").

Textron does not contest that the 2006 Harding reference discloses every limitation of claims 1-5 and 12 in the co-pending IPR. The 2007 Harding reference contains substantially similar disclosures. *See* Ex. J (2007 Harding Reference), TEXTRON_0377476-77.

### E. DJI Immediately Sought to Amend Its Answer to Add Inequitable Conduct

Two days after receiving the prior art references Textron was obligated to produce over six months ago and five days after DJI first learned of their existence, DJI informed Plaintiff that it would move to amend its pleadings to add a defense of inequitable conduct for the '752 patent and requested Plaintiff's position. Ex. H (Email Chain). Plaintiff responded on November 28, 2022, that it opposes DJI's motion. *Id.* DJI now files this motion requesting leave to amend.

## II. LEGAL FRAMEWORK

When the party moving to amend pleadings after the scheduled time for doing so shows good cause, "the more liberal standard of Rule 15(a)" applies, which states that courts "should freely give leave" to amend the pleadings "when justice so requires." *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015); Fed. R. Civ. P. 15(a)(2). Four factors are considered for assessing good cause: "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *Squyres*, 782 F.3d at 237.

### III.   ARGUMENT

#### A.   DJI Diligently Moved to Amend When the Facts Became Available

DJI moved to amend immediately after learning of the facts supporting a defense of inequitable conduct for the '752 patent. Despite requesting such information in May 2022, Plaintiff did not disclose in its discovery responses (and still has not) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ DJI did not learn of such information until the final day of fact discovery, and Plaintiff did not produce the prior art papers until November 21, 2022, after the close of fact discovery. As such, DJI could not have amended its pleadings by the August 11, 2022, deadline set forth in the Court's Scheduling Order (Dkt. 54).

DJI acted quickly after learning of Textron's inequitable conduct. DJI immediately requested the documents. Ex. H (Email Chain). DJI reviewed them and, two days after receiving them, notified Plaintiff of its intent to amend its pleadings to add an inequitable conduct defense. *Id.* DJI then filed this motion four days after Plaintiff indicated that it opposed the motion. *Id.* DJI's diligence here weighs in favor of a finding of good cause to amend DJI's pleadings.

#### B.   DJI's Amendments Are Important to Resolve the Parties' Disputes

DJI's defense of inequitable conduct regarding the '752 patent is important in resolving the parties' disputes with respect to the '752 patent. Plaintiff accuses DJI of infringing claims 1, 2, 6, 7, 12, and 13 of the '752 patent. DJI contends that these claims are not infringed, invalid, and, in light of the recent evidence, unenforceable. For example, the Patent Trial and Appeal Board instituted *inter partes* review of the '752 patent with respect to claims 1-7, 10, and 12 (all challenged claims) based on DJI's petition asserting that those claims were anticipated and rendered obvious by the prior art. When Plaintiff filed its Patent Owner's Response, it did not even *try* to defend the validity of claims 1-5, 10, and 12. *See DJI Europe B.V. v. Textron Innovations*

6

*Inc.*, IPR2022-00162, Paper 16 (Aug. 25, 2022). With Textron not disputing the invalidity of these claims, it appears highly likely that the Board will find them unpatentable. The Patent Office's institution decision illustrates that the references Textron withheld are material to patentability.

The primary reference that DJI asserted in its IPR is titled "Development of Modern Control Laws for the AH-64D in Hover/Low Speed Flight" by Jeffrey W. Harding et al. Ex. I. This paper was presented at the American Helicopter Society's 62nd Annual Forum. Despite Mr. Christensen testifying that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

However, another paper by the same authors, titled "Optimization and Piloted Simulation Results of the AH-64D Modern Control Laws" ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. J. This paper was presented at the American Helicopter Society's 63rd Annual Forum and specifically identifies the prior paper by Harding et al. as documenting "[e]arly [modern control laws] MCLAWS development work" and presenting "the overall design approach and the model following architecture." *Id.*, TEXTRON_0377475. This paper includes disclosures that are substantially similar to those in the first Harding paper that were relied on in the petition for IPR of the '752 patent and the Board's institution decision—disclosures that Plaintiff did not dispute disclosed each limitation of claim 1 of the '752 patent. *See supra* Section I.D. Given the similarity of the disclosures of the two Harding papers and that the second paper identifies the first Harding paper, Plaintiff cannot reasonably dispute the materiality of this paper.

Another paper ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ("Design and Pilot Evaluation of the RAH-66 Comanche Selectable Control Modes" by Phillip J. Gold et al.) is prior art that DJI identified in its invalidity contentions as invalidating claim 13 of the '752 patent.

These are just two examples ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that were only recently produced to DJI. Despite Mr. Christensen's testimony during his deposition that he understood ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Moreover, during prosecution, the patentee distinguished the prior art of record by amending the claims to add limitations that were disclosed in the prior art ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ For example, during prosecution, the patentee argued that the claims were allowable because the prior art "fail[ed] to disclose the required detent position related features of claims 1, 13, and 19." Ex. K, 7. According to the patentee, the prior art was "silent as to any control behavior be[ing] predicated by a controller being in a detent position." *Id*.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As just one example, "UH-60M Upgrade Fly-By-Wire Flight Control Risk Reduction using the RASCAL JUH-60A In-Flight Simulator" by Jay W. Fletcher et al., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ discloses a "hover hold" that engages "[w]hen the pilot returns the cyclic to center"—the very limitation that the patentee added to claim 1 to obtain allowance. Ex. L, TEXTRON_0377501.

From these facts, it is reasonable to infer that these documents were withheld from the PTO with a specific intent to deceive the PTO. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011) (en banc) ("[A] district court may infer [deceptive] intent from indirect and circumstantial evidence."). The Federal Circuit affirmed a finding of deceptive intent under similar facts in *Belcher Pharmaceuticals, LLC v. Hospira, Inc.*, 11 F.4th 1345, 1353-54 (Fed. Cir. 2021). In *Belcher*, "there was no direct evidence of deceptive intent," but the court still found that deceptive intent was "the only reasonable inference that [could] be drawn" when the patentee withheld prior art that disclosed a key feature of the patent. *Id.* at 1353-54. The patentee's Chief Science Officer, who was involved in the prosecution of the patent, testified that "he withheld the references because he believed that they were irrelevant . . . because they were different from the asserted claims in certain respects," but the court nonetheless affirmed the finding that this prior art was withheld with deceptive intent based on the individual's knowledge of the product; his "central role" in the patent prosecution and the FDA approval process, in which the patentee stated that the key feature was "old"; and the patentee's statements to the examiner about the feature being critical, despite knowledge of the prior art. *Id.* In this case, the presumption is even stronger ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████ But for Textron's failure to disclose the documents to the PTO, at least one claim of the '752 patent, including claims 1 and/or 13, would not have issued. As such, the entire '752 patent is unenforceable.

### C.   Plaintiff Cannot Reasonably Claim Prejudice

Given that the timing of this motion to amend was predicated on Plaintiff's failure to comply with its discovery obligations, Plaintiff cannot reasonably claim prejudice. Indeed, Plaintiff was not deprived of any discovery during the fact discovery period, as it has the entirety

9

of relevant facts regarding its own inequitable conduct. Plaintiff did not need to, for example, seek discovery from DJI regarding Textron's own inequitable conduct. Additionally, Plaintiff had an opportunity to conduct redirect examination during Mr. Christensen's deposition and did so. As to the technical aspects of inequitable conduct, Plaintiff will have an opportunity to depose DJI's expert and provide its own expert report explaining its view of the issues.

If DJI is not afforded an opportunity to amend its pleadings, DJI will be the one prejudiced. Had Plaintiff complied with its discovery obligations, DJI could have amended its pleadings by the deadline set forth in the Court's Scheduling Order. Because Plaintiff failed to do so, DJI did not know of the underlying facts to support a defense of inequitable conduct until long after this deadline and thus could not have amended its pleadings by the scheduled deadline.

### D. A Continuation Is Available but Unnecessary

While a continuation is available, Defendants do not expect that additional discovery is necessary. The 2007 Harding reference is substantially similar to the 2006 Harding reference that DJI asserted in its invalidity contentions (and is also asserted in the *inter partes* review). DJI's invalidity contentions also put Plaintiff on notice of its invalidity arguments with respect to the Gold reference. Moreover, the details regarding ████████████████████████████ ████████████████████████████████████████████████████████████████████ and Plaintiff generally. Thus, no additional fact discovery should be necessary regarding this issue.

### IV. CONCLUSION

Because good cause exists and justice so requires based on the importance of the issue and Textron's delay in complying with discovery obligations, leave to amend should be freely granted. DJI respectfully requests that the Court grant leave to file the proposed amended pleading (Ex. A).

DATED: December 2, 2022

/s/ Benjamin R. Schlesinger
Qingyu Yin (*pro hac vice*)
J. Michael Jakes (*pro hac vice*)
Sydney Kestle (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000
qingyu.yin@finnegan.com
mike.jakes@finnegan.com
sydney.kestle@finnegan.com

Benjamin R. Schlesinger (*pro hac vice*)
Robert K. High (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
271 17th St. NW Suite 1400
Atlanta, GA 30363-6209
(404) 653-6400
benjamin.schlesinger@finnegan.com
robert.high@finnegan.com

Jacob A. Schroeder (*pro hac vice*)
Jinwoo Kim (*pro hac vice*)
Yanyi Liu (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
Stanford Research Park, 3300 Hillview Avenue, 2nd Floor
Palo Alto, CA 94304
(650) 849-6600
jacob.schroeder@finnegan.com
jinwoo.kim@finnegan.com
yanyi.liu@finnegan.com

John P. Palmer
State Bar No. 15430600
John A. "Andy" Powell
State Bar No. 24029775
USPTO Reg. No. 71,533
Jacqueline P. Altman
State Bar No. 24087010
**NAMAN, HOWELL, SMITH & LEE PLLC**
400 Austin Avenue, Suite 800

       Waco, Texas 76701
       Telephone: 254.755.4100
       Facsimile: 254.754.6331
       palmer@namanhowell.com
       powell@namanhowell.com
       jaltman@namanhowell.com

       *Attorneys for Defendants SZ DJI Technology Co., Ltd., DJI Europe B.V., SZ DJI Baiwang Technology Co. Ltd., and iFlight Technology Company Ltd.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to all counsel of record who have appeared in this case per Local Rule CV-5(b) on December 2, 2022.

/s/ *Benjamin R. Schlesinger*
Benjamin R. Schlesinger