IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| TEXTRON INNOVATIONS INC., | ) <br> ) <br> ) |
| Plaintiff, | ) Civil Action No. 6:21-cv-00740-ADA <br> ) |
| v. | ) JURY TRIAL DEMANDED <br> ) |
| SZ DJI TECHNOLOGY CO., LTD., DJI EUROPE B.V., SHENZHEN DAJIANG BAIWANG TECHNOLOGY CO. LTD., and IFLIGHT TECHNOLOGY COMPANY LTD., | ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**DEFENDANTS' OBJECTIONS TO AND APPEAL FROM
NOVEMBER 30, 2022 NON-DISPOSITIVE ORDER OF MAGISTRATE JUDGE**

The DJI Defendants respectfully object to and appeal Magistrate Judge Gilliland's November 30, 2022, Discovery Order (Dkt. 108, hereafter "Discovery Order" or the "Order") as it contains erroneous findings of fact and contradicts the pertinent law and procedures. *See, e.g.*, *Baylor Health Care Sys. v. Equitable Plan Servs.*, 955 F. Supp. 2d 678, 689 (N.D. Tex. 2013); *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a) ("A magistrate judge's determination regarding a nondispositive matter is reviewed under the 'clearly erroneous or contrary to law' standard."); *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd*, 19 F.3d 1432 (6th Cir. 1994) (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)); *Fogel v. Chestnutt*, 668 F.2d 100, 116 (2nd Cir. 1981), *cert. denied sub nom. Currier v. Fogel*, 459 U.S. 828 (1982).

The Discovery Order is based on two clearly erroneous factual findings. First, Magistrate Judge Gilliland found that "DJI failed to produce the source code following a previous hearing on December 9, 2021." That finding incorrectly presumed that DJI was required to produce the ***entire***

1

source code base by the Court at the December 9, 2021, hearing. But Judge Albright did not order production of the entire code base, did not order early production of any source code, and did not order DJI to investigate restrictions on exporting portions of irrelevant code. Instead, Judge Albright acknowledged the logistical hurdles in producing source code that may be subject to China's export laws and allowed Plaintiff to serve discovery requests early so that DJI could evaluate them and determine if *relevant* source code was subject to restrictions by the Chinese government so that those issues could be investigated with as little delay as possible. Ex. 1 (Transcript) at 5:6-18, 11:13-16, 14:6-10. Judge Albright specifically contemplated that the parties work to get "the source code *that both sides agree is appropriate* out of China and into [Textron's] hands." Ex. 1 (Transcript) at 11:13-16 (emphasis added).

Consistent with Judge Albright's order, DJI worked with Textron prior to August 2022 to identify relevant source code files and produced such relevant code. DJI timely objected to unreasonable requests and often offered compromises. *See, e.g.*, Ex. 2 at 10-11 (Response to RFP No. 4); Ex. 3 (source code available in May 2022); Ex. 4 (email exchanges). It turned out that all the relevant code Textron asked for before August 2022 did not require a review under the Chinese export control law; therefore, DJI was able to produce thousands of source code files without having to seek permission from the Chinese government. Export control issues only arose with Textron's requests on August 4, 2022, which identified several software functions and demanded source code for such functions. Ex. 4 at 11 (requesting code subject to Discovery Order in eighth bullet). These requests sought irrelevant code. *See generally* Ex. 5 (Nourbakhsh Decl.). Nonetheless, upon receiving Textron's August requests, DJI immediately started investigating potential export control issues, while at the same time negotiating with Textron on alternative means (such as stipulation) to provide the necessary information to Textron, the latter of which

failed because Textron demanded unreasonable concessions. As such, the Magistrate Judge's finding that "DJI failed to produce the source code following a previous hearing on December 9, 2021" is clearly erroneous because DJI was not ordered to produce the source code at the hearing and DJI timely produced relevant code in response to Textron's initial and follow-up requests.

Second, the Magistrate Judge found that DJI "failed to seek permission or even investigate the necessity of obtaining permission under China's export laws until August or September 2022." This finding falsely presumed that DJI was required to seek such permission earlier, even before knowing which source code files to seek permission for. Again, as Judge Albright clarified at the December 9, 2021, hearing, he was not ordering DJI to produce the entire source code base, but rather expected the parties to work out which source code files might be relevant and DJI to seek such permission as soon as production of any relevant source code might implicate Chinese export control laws. DJI did exactly that. Prior to August 4, 2022, the relevant source code files Textron requested did not implicate Chinese export control laws and did not require a review under the Chinese export control laws. As soon as DJI received Textron's request on August 4, 2022, for source code files that might indeed implicate Chinese export control laws, DJI promptly started the investigation. Thus, DJI did not "fail[] to seek permission or even investigate the necessity of obtaining permission under China's export laws until August or September 2022"; ***DJI could not have done it before Textron identified the source code files at issue in its August 4 requests.***

Additionally, the Discovery Order orders an adverse inference jury instruction, yet is devoid of the legal analysis and specific factual findings necessary to do so and is thus contrary to law. The instruction also ignores the logistical realities of Chinese export laws and this Court's limited power over the Chinese government. In particular, Judge Gilliland ordered DJI to immediately seek permission to produce the source code files at issue and, "if the requested source

3

code is not produced by DJI on or before January 3, 2023, then . . . the jury should presume that the source code would have been favorable to Plaintiff and Plaintiff's infringement allegations regarding the '752 Patent." This order presumes two things: 1) the Chinese government will have completed its review of DJI's application before January 3, 2023; and 2) more importantly, the Chinese government ultimately permits the export of such source code. Both presumptions can turn out wrong and the result is not within the parties' or the Court's control.

Before the November 10th Hearing before Judge Gilliland, DJI had already spent a significant amount of time carrying out internal investigation and information gathering and had already started the preparation of an application for permission from the Chinese government to export the source code files at issue. *See* Ex. 6 (Yu Decl.); Ex. 7 (Ren Decl.). At the Hearing, DJI explained to Judge Gilliland that it expected to file the application in a matter of days and that the Chinese government's review could take up to 45 business days, i.e., until after January 3, 2023. *See* Ex. 6 (Yu Decl.); Ex. 7 (Ren Decl.). Judge Gilliland has essentially ordered DJI to produce the source code *even if the Chinese government has not completed its review by then.*

The prospect of the Chinese government ultimately rejecting the application and prohibiting the exportation of such source code presents a much more serious concern vis-à-vis Judge Gilliland's order: Exportation of the code will clearly violate the Chinese law; yet failure to produce the code would lead to the punishment (jury presumption) prescribed by Judge Gilliland. In this scenario, in order to avoid the punishment imposed by Judge Gilliland, *DJI would be required to break Chinese law.*

Lastly, the Magistrate Judge failed to engage in the proper analysis and failed to reach the required factual findings under Rule 37 prior to issue an adverse inference jury instruction.[1] When confronted with the question of whether to issue an adverse inference instruction based on the withholding of evidence, courts in this circuit require a finding of bad faith before issuing such an instruction. *Mobility Workx, LLC v. Cellco P'ship*, Civil Action No. 4:17-CV-00872, 2019 U.S. Dist. LEXIS 199167, at *15 (E.D. Tex. Nov. 18, 2019) ("In *United States v. Wise*, the Fifth Circuit stated that 'absent a showing of bad faith, failure to produce records is insufficient to warrant a spoliation or *missing evidence instruction*." (quoting *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000)). Here, even assuming *arguendo* that DJI should have and could have produced additional code earlier, Textron never briefed or argued possible bad faith on DJI's part, and the Magistrate Judge failed to find one. *See, e.g.*, Ex. 8 (November 10, 2022 transcript); Ex. 9 (October 17, 2022 transcript).

For these reasons, DJI respectfully requests this Court sustain its objections and vacate Magistrate Judge Gilliland's Discovery Order.

DATED: December 14, 2022

/s/ Benjamin R. Schlesinger
Qingyu Yin (*pro hac vice*)
J. Michael Jakes (*pro hac vice*)
Sydney Kestle (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

---

[1] This issue was not briefed and heard as a Rule 37 motion for sanctions or request for an adverse instruction, but instead was brought before the Magistrate Judge pursuant to the Court's procedure on discovery disputes. While an effective procedure for resolving discovery disputes, a chart limited to 500 words is insufficient to fully brief both the factual background underlying the dispute and the legal issues implicated by Rule 37 sanctions.

(202) 408-4000
qingyu.yin@finnegan.com
mike.jakes@finnegan.com
sydney.kestle@finnegan.com

Benjamin R. Schlesinger (*pro hac vice*)
Robert K. High (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
271 17th St. NW Suite 1400
Atlanta, GA 30363-6209
(404) 653-6400
benjamin.schlesinger@finnegan.com
robert.high@finnegan.com

Jacob A. Schroeder (*pro hac vice*)
Jinwoo Kim (*pro hac vice*)
Yanyi Liu (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
Stanford Research Park, 3300 Hillview Avenue, 2nd Floor
Palo Alto, CA 94304
(650) 849-6600
jacob.schroeder@finnegan.com
jinwoo.kim@finnegan.com
yanyi.liu@finnegan.com

John P. Palmer
State Bar No. 15430600
John A. "Andy" Powell
State Bar No. 24029775
USPTO Reg. No. 71,533
Jacqueline P. Altman
State Bar No. 24087010
**NAMAN, HOWELL, SMITH & LEE PLLC**
400 Austin Avenue, Suite 800
Waco, Texas 76701
Telephone: 254.755.4100
Facsimile: 254.754.6331
palmer@namanhowell.com
powell@namanhowell.com
jaltman@namanhowell.com

*Attorneys for Defendants SZ DJI Technology Co., Ltd., DJI Europe B.V., SZ DJI Baiwang Technology Co. Ltd., and iFlight Technology Company Ltd.*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that Defendants' counsel conferred with Plaintiff's counsel on December 14, 2022 via phone call and email. Plaintiff's counsel indicated that they are opposed to the relief sought herein.

/s/ Benjamin R. Schlesinger
Benjamin R. Schlesinger

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing and supporting exhibits was served via electronic mail to all counsel of record who have appeared in this case per Local Rule CV-5(b) on December 14, 2022.

/s/ Benjamin R. Schlesinger
Benjamin R. Schlesinger