IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| TEXTRON INNOVATIONS INC., <br><br> Plaintiff, <br><br> v. <br><br> SZ DJI TECHNOLOGY CO., LTD., DJI EUROPE B.V., SHENZHEN DAJIANG BAIWANG TECHNOLOGY CO. LTD., AND iFLIGHT TECHNOLOGY COMPANY LTD. <br><br> Defendants. | CIVIL ACTION NO. 6:21-CV-740-ADA <br><br> **JURY TRIAL DEMANDED** <br><br> **FILED UNDER SEAL** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO SERVE SUPPLEMENTAL EXPERT REPORTS**

**TABLE OF CONTENTS**

I. DJI's Source Code Application Does Not Provide Relevant "New Information" Justifying Supplemental Expert Reports ................................................................................................ 2

II. Mr. Ai's Deposition Errata Does Not Require Any Modification to Dr. Michalson's Opinions, Nor Can It Shoehorn in the Rest of Dr. Michalson's Supplemental Report ........... 5

III. Textron Has Not Shown Its Supplements Are Substantially Justified or Harmless ................ 6

IV. To the Extent the Court Grants Textron's Motion, DJI Requests Leave to Serve Supplemental Expert Reports ................................................................................................ 8

V. Conclusion ............................................................................................................................ 8

## TABLE OF EXHIBITS

| Exhibit | Document Title |
|---|---|
| 1 | Excerpts of January 22, 2023 Deposition Transcript of Dr. William Michalson |
| 2 | October 24, 2022 Declaration of Qing Ren |
| 3 | Excerpts of December 8, 2022 Opening Expert Report of Dr. William Michalson |
| 4 | U.S. Patent No. 9,162,752 |

Claim 13 of the '752 patent is about flight behavior, for example, what action the helicopter takes in response to stick movement, such as maintaining its speed when the stick is let go. Flying DJI's accused products sufficiently reveals that they do not practice the '752 patent; and relevant source code sufficiently shows the same.

Claim 13 of the '752 patent is *not* about flight performance, for example, precisely how fast or how smooth the helicopter should fly or hover. DI 137-1 ¶¶ 3-8 (Dr. Michalson describing the unproduced code as relating to flight performance). Textron knew that the low-level source code that takes sensor data and controls the smooth spinning of the motors is unnecessary and irrelevant for the '752 patent. *E.g.*, Ex. 1 at 156:15-164:22 (Dr. Michalson admitting the low-level code is not needed for his analysis of claim 13 of the '752 patent, and that he only asked for the code just in case someone asked him how the motors are controlled).

It is thus suspect that Textron has persistently pursued the low-level, irrelevant code, despite most likely knowing that such code would trigger Chinese export control laws and DJI would not be able to produce it without breaking those laws. It is more problematic that, after convincing the Court to award the adverse jury inferences it asked for, Textron now takes a step further and claims that claim 13 of the '752 patent is suddenly all about flight performance (DI 137-1 ¶¶ 3-8) and becomes much more valuable because of some alleged "potential connection between the Chinese Military and DJI's drone business" (DI 137-2 ¶ 15).

But claim 13 of the '752 patent concerns neither flight performance nor any perceived politics. All the shenanigans about DJI's citizenship or connection with the Chinese government should not distract the Court and the jury from the real issue, i.e., whether the accused products infringe claim 13 of the '752 patent. Textron's attempt to derail this simple patent case through the supplementation by its two experts should be rejected.

1

I.  **DJI's Source Code Application Does Not Provide Relevant "New Information" Justifying Supplemental Expert Reports**

Textron contends that DJI's application to the Chinese government (to seek permission to export source code sought by Textron) included purportedly "new statements" "relevant to Dr. Michalson's and Mr. Andrien's opinions." Mot. at 4. In its view, these "new statements" include discussing (1) "seven of the eight source code modules that DJI describes in the application" and (2) the alleged "importance and value of the technology" as to "flight performance." *Id.* Textron submits that these statements could not have been addressed in the opening round of reports and that supplemental reports are therefore justified. *See id.* Not so.

As to the first category of purported "new statements,"  that Textron now argues is "new information" from DJI's application. For example, Textron's expert, Dr. Michalson, says in his supplemental report that DJI's application explained that:

2

> The technology to-be-exported relates to a flight control system for multirotor drones; the system receives, by means of multiple sensors, data about the drone's flight attitude, utilizes such data for calculation and determination, and then sends commands to control actuation members to complete the drone's flight actions, such as flying, hovering, and attitude change.

DI 137-1 ¶ 3 (page 3). He then identifies modules of the technology sought to-be-exported, and explains they include "(1) Device driving management module"; "(2) Sensor value reading and sensor management module"; "(3) Actuator device management module"; "(4) State estimation module"; "(5) Flight control law module"; "(6) Attitude sensing and determination module"; and "(7) Redundant device management." *Id.* (pages 3-10). Dr. Michalson contends this is relevant to the '752 patent and further supports his infringement opinion.[1] *Id.* ¶ 4. But these statements from DJI's application ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ These statements in DJI's application are not "new information" that Textron and Dr. Michalson lacked access to. Nor do they justify Textron's untimely supplemental reports. Mot. at 1; *see also Daedalus Blue LLC v. SZ DJI Tech. Co.*, 20-CV-00073-ADA, 2022 WL 831619, at *4-5 (W.D. Tex. Feb. 24, 2022) (finding report not justifiable supplement because "information available prior to the deadline for expert disclosures"). The additional statements in DJI's application that Dr. Michalson cites are not relevant for claim 13 of the '752 patent because they concern sensors and low-level motor/actuator controls—neither of which are claimed. *Compare*

---

[1] DJI also disputes that any of these statements are relevant to claim 13 of the '752 patent and Textron's infringement allegations.

DI 137-1 ¶ 3 (pages 3-10) (left column identifying purported "new" statements), *with* Ex. 4 at claim 13 (not claiming low-level motor/actuator controls or sensors).

The same is true for the second category of purported "new statements," which both Dr. Michalson and Mr. Andrien rely upon in their supplements. Dr. Michalson contends that DJI said in its Chinese application that the disputed source code pertains to enhancing flight performance and realizing high-precision state estimation. *See* DI 137-1 ¶¶ 6-8. And Mr. Andrien used that as justification for radically increasing the "damages quantum" to be allocated for the '752 patent.[2] *See* DI 137-2 ¶¶ 10-14. But claim 13 of the '752 patent does not concern "flight performance," such as how fast or smooth the drone operates; rather, it is about flight behavior based on stick movement (e.g., maintaining its speed, heading, or altitude when the stick is let go to detent). *See, e.g.*, Ex. 1 at 156:15-164:22. ▮

Surprisingly, upon learning that the source code under export control is about flight performance, Textron suddenly believes claim 13 is all about flight performance. But the scope

---

[2] Mr. Andrien also contends the Chinese government's statement that it would deny permission to export source code "for the protection of the security of the State" somehow shows there is a relationship between the Chinese military and DJI and justifies his profit split opinion. DI 137-2 ¶ 15. This is not true. The application acknowledges that China's export restrictions apply even if the technology is *not* used by the Chinese military and is *not* "a national secret technology"—DJI's application makes clear it is not either of those. DI 133-2 at 5 (answering "no" to both questions). ▮ Mr. Andrien provides no excuse for his belated discussion of this language.

4

of a patent claim does not change like a nose of wax. It certainly does not change based on how an accused product works. Claim 13 is about flight behavior and movement in response to stick movement, not flight performance. *See, e.g.*, Ex. 4 at 12:36-44, 12:47-54, 12:51-54, 12:58-60, 12:64-13:3 (claim 13). Textron's belated attempt to claim that its patent relates to "flight performance" does not justify its ask for more damages. The untimely supplements for Dr. Michalson and Mr. Andrien should be stricken.

Textron tries to shift blame to DJI by arguing that DJI "withheld the application" and should have produced it before the opening report deadline. *See* Mot. at 1-2 (stating that "DJI's delay in producing the information is confounding to TII" and "DJI should have produced that application . . . before TII's December 8, 2022 opening expert reports"). But, as explained earlier, the application itself required the Chinese government's approval before DJI could even share it with its U.S. counsel, and DJI submitted it to the Court as soon as it obtained the Chinese government's approval and an English language translation. In addition, as explained above, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

**II.   Mr. Ai's Deposition Errata Does Not Require Any Modification to Dr. Michalson's Opinions, Nor Can It Shoehorn in the Rest of Dr. Michalson's Supplemental Report**

Textron also contends that it is "appropriate for Dr. Michalson to supplement his report to account for Mr. Ai's errata." Mot. at 5. Textron's invocation of that agreement is nothing more than a pretense to justify its supplement. Mr. Ai's errata simply conforms his testimony to what Textron's expert already acknowledged in his opening expert report and deposition. Specifically, Textron's expert, Dr. Michalson, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Case 6:21-cv-00740-ADA Document 158 Filed 02/06/23 Page 9 of 13

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████ Mr. Ai's errata clarifying this distinction is thus consistent with Dr. Michalson's understanding at his deposition. Accordingly, there is no need for Dr. Michalson to supplement his opening report on this basis. Nevertheless, to the extent the Court permits this limited supplement, Textron should not be allowed to shoehorn in the rest of Dr. Michalson's supplemental opinions, and the remainder should be stricken for the reasons provided above.

**III. Textron Has Not Shown Its Supplements Are Substantially Justified or Harmless**

Textron must demonstrate that its late disclosure is substantially justified and harmless. *Maguregui v. ADP, LLC*, EP-16-CV-121-PRM, 2017 WL 5473484, at *2 (W.D. Tex. Apr. 10, 2017). It cannot. It has not shown that any of the factors set forth in *Sierra Club* are met. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571-73 (5th Cir. 1996); *Daedalus Blue*, 2022 WL 831619, at *2-3. First, Textron contends that it has provided a legitimate reason for its "failure to comply with the discovery order." *Sierra Club*, 73 F.3d at 571-73 (factor 4); Mot. at 6. In particular, Textron argues that it "could not have possibly disclosed in December 2022 opinions [] material received in January 2023." Mot. at 6. But as discussed, ████████

████████████████████████████████████████████████████

████████████████████████████ Textron has articulated no reason why the same arguments could not have been ████████████████████████████████████.

6

Second, Textron has not demonstrated the importance of the testimony it intends to offer based on the alleged new statements. *Sierra Club*, 73 F.3d at 571-73 (factor 1); Mot. at 6. None of DJI's statements in its application show the disputed source code relates to claim 13 of the '752 patent. Indeed, when asked at his deposition what code was missing, Dr. Michalson explained it was for "motor control" ("low level [code] . . . that's actually controlling the motor") and code relating to "sensor[s]." Ex. 1 (Dr. Michalson Deposition Transcript) at 156:15-164:22, including 157:23-158:11, 158:23-160:1; *see also* DI 137-1 ¶¶ 3-8 (showing that the source code simply pertains to motor control and the sensors). Dr. Michalson could not identify a single limitation these modules related to and instead explained that it was simply "a matter of completeness." Ex. 1 at 160:25-161:3. To be clear, claim 13 of the '752 patent—the only asserted claim from the '752 patent—does not recite any "motor control" or "sensor" input. Ex. 4. Nor is it clear how DJI's statements about unrelated technology could inform Mr. Andrien's opinions regarding the value of the '752 patent. In particular, it is unclear how DJI's statements that source code relates to flight performance (1) inform which tranche of user survey results Mr. Andrien can rely on for his damages assessment, or (2) change the value of the '752 patent. If the '752 patent relates to flight performance, then Textron, as the patentee, should have known that from the beginning.

Last, Textron has not demonstrated there is no prejudice to DJI or a possibility of curing that prejudice by granting a continuance. *Sierra Club*, 73 F.3d at 571-73 (factors 2 and 3); Mot. at 6. Textron served the supplemental reports three days before Dr. Michalson's deposition and less than a week before Mr. Andrien's deposition. This is not sufficient time for DJI to prepare. And the information Textron relied upon (█████████████████████████

7

███████) was used to justify an after-the-fact damages award adjustment of several hundred million dollars. It is highly prejudicial to DJI.

### IV. To the Extent the Court Grants Textron's Motion, DJI Requests Leave to Serve Supplemental Expert Reports

If the Court allows Textron to serve its supplemental reports, DJI respectfully requests that the Court allow its technical and damages experts to submit responsive reports. Textron's request for the Court to permit Textron's supplemental opening expert reports but preclude DJI from responding with supplemental rebuttal expert reports further illustrates how Textron seeks to litigate this case based on DJI's citizenship rather than on the merits. Contrary to Textron's statements, DJI's U.S. counsel and its experts did not have earlier access to this information, and certainly had no idea Textron would belatedly serve supplemental reports to its opening reports, let alone what they would opine therein. Accordingly, at a minimum, DJI should be permitted to respond to these belated supplemental opening expert reports.

### V. Conclusion

DJI respectfully requests the Court deny Textron's request to serve supplemental expert reports. If, however, the Court allows Textron to serve its supplemental reports, DJI respectfully requests that the Court allows its experts to submit responsive reports.

DATED: January 30, 2023

/s/ *Benjamin R. Schlesinger*
Qingyu Yin (*pro hac vice*)
J. Michael Jakes (*pro hac vice*)
Sydney Kestle (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000
qingyu.yin@finnegan.com
mike.jakes@finnegan.com
sydney.kestle@finnegan.com

Benjamin R. Schlesinger (*pro hac vice*)
Robert K. High (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
271 17th St. NW Suite 1400
Atlanta, GA 30363-6209
(404) 653-6400
benjamin.schlesinger@finnegan.com
robert.high@finnegan.com

Jacob A. Schroeder (*pro hac vice*)
Jinwoo Kim (*pro hac vice*)
Yanyi Liu (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
Stanford Research Park
3300 Hillview Avenue, 2nd Floor
Palo Alto, CA 94304
(650) 849-6600
jacob.schroeder@finnegan.com
jinwoo.kim@finnegan.com
yanyi.liu@finnegan.com

John P. Palmer
State Bar No. 15430600
John A. "Andy" Powell
State Bar No. 24029775
USPTO Reg. No. 71,533
Jacqueline P. Altman
State Bar No. 24087010
**NAMAN, HOWELL, SMITH & LEE PLLC**
400 Austin Avenue, Suite 800
Waco, Texas 76701
Telephone: 254.755.4100
Facsimile: 254.754.6331
palmer@namanhowell.com
powell@namanhowell.com
jaltman@namanhowell.com

*Attorneys for Defendants SZ DJI Technology Co., Ltd., DJI Europe B.V., SZ DJI Baiwang Technology Co. Ltd., and iFlight Technology Company Ltd.*

9

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that Defendants' Opposition to Plaintiff's Motion for Leave to Serve Supplemental Expert Reports and supporting documents Exhibits 1-4 was served via electronic mail to all counsel of record who have appeared in this case per Local Rule CV-5 on January 30, 2023. The undersigned hereby further certifies that the proposed order was served via electronic mail to all counsel of record who have appeared in this case per Local Rule CV-5 on January 30, 2023.

/s/ *Benjamin R. Schlesinger*
Benjamin R. Schlesinger