# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| TEXTRON INNOVATIONS INC., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 6:21-CV-740-ADA |
| SZ DJI TECHNOLOGY CO., LTD., DJI EUROPE B.V., SHENZHEN DAJIANG BAIWANG TECHNOLOGY CO. LTD., AND iFLIGHT TECHNOLOGY COMPANY LTD. | **JURY TRIAL DEMANDED**  **FILED UNDER SEAL** |
| Defendants. | |

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY
OF PLAINTIFF'S EXPERT JEFFREY ANDRIEN**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      Introduction ................................................................................................... 1

II.     Factual Background ......................................................................................... 3

     a.      DJI Is a Private Drone Company With a Staunch Policy Against Having
         Its Drones Used for Any Military Purpose ......................................................... 3

     b.      Textron Is a Helicopter Company With a Presence In China ............................... 5

     c.      Case Background ............................................................................................ 5

III.    Legal Standard ................................................................................................ 6

IV.     Argument ........................................................................................................ 7

     a.      DJI's Chinese Citizenship Is Irrelevant to the Value of the Technology,
         and Mr. Andrien's Reliance On DJI's Citizenship to Split Profits Is an
         Unsound and Prejudicial Methodology ............................................................. 7

         i.      Mr. Andrien's Analysis Improperly Considers DJI's Chinese
               Citizenship to Justify Effectively Disgorging DJI of Any Profits ............. 8

         ii.     DJI Is Not a "Chinese Military Company" and Does Not Sell
               Drones to the Chinese Military ................................................................ 10

         iii.    There is No Indication DJI Was at Risk of Being Blacklisted at the
               Time of the 2015 Hypothetical Negotiation ............................................. 12

         iv.     Regardless, Mr. Andrien's Suggestion that Textron Would be
               Reluctant to Negotiate with DJI is Belied by the Factual Record ........... 13

     b.      Mr. Andrien's *Georgia-Pacific* Factor 13 Analysis is Flawed, Unreliable,
         and Speculative, and It Should be Excluded ...................................................... 14

         i.      Mr. Andrien's Income Approach Fails to Adequately Apportion
               Between the Patented and Non-Patented Features.................................... 14

         ii.     Mr. Andrien's 50% (or 87.5%) Allocation of Survey Features to
               "Hover" and the '752 Patent Is Arbitrary and Speculative, and It
               Should be Excluded ................................................................................. 16

     c.      Mr. Andrien Fails to Identify the Correct Parties to the Hypothetical
         Negotiation and His Opinion Should Be Excluded ............................................ 19

V.      Conclusion ..................................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                              **Page(s)**

*Aqua Shield v. Inter Pool Cover Team*,
    774 F.3d 766 (Fed. Cir. 2014)..................................................................................19

*Atlas IP, LLC v. Medtronic, Inc.*,
    No. 13-CIV-23309, 2014 WL 5741870 (S.D. Fla. Oct. 6, 2014) ...........................................18

*ContentGuard Holdings, Inc. v. Amazon.com Inc.*,
    Nos. 2:13-CV-01112-JRG, 2:14-CV-00061-JRG, 2015 WL 11089489 (E.D.
    Tex. Aug. 25, 2015) ...............................................................................................7

*Daedalus Blue LLC v. SZ DJI Tech. Co.*,
    W-20-CV-00073-ADA, 2022 WL 831619 (W.D. Tex. Feb. 24, 2022) ................................20

*Daubert v. Merrell Dow Pharmaceuticals*,
    509 U.S. 579 (1993)........................................................................................6, 11, 14

*Droplets, Inc. v. Yahoo! Inc.*,
    No. 12-cv-03733-JST, 2022 WL 2670163 (N.D. Cal. Jan. 12, 2022) .....................................9

*Fail-Safe, L.L.C. v. A.O. Smith Corp.*,
    744 F. Supp. 2d 870 (E.D. Wis. 2010).......................................................................18

*Koninklijke Philips Elecs. N.V. v. Zoll Lifecor Corp.*,
    No. CV 12-1369, 2017 WL 3140798 (W.D. Pa. July 25, 2017)............................................18

*LaserDynamics Inc. v. Quanta Comp. Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)...................................................................................18

*Lawrence v. Raymond Corp.*,
    No. 09-cv-1067, 2011 WL 3418324 (N.D. Ohio Aug. 4, 2011), *aff'd*, 501 F.
    App'x 515 (6th Cir. 2012) .......................................................................................18

*Magnivision , Inc. v. Bonneau Co.*,
    115 F.3d 956 (Fed.Cir. 1997) ..................................................................................14

*MobileMedia Ideas, Inc. v. HTC Corp.*,
    No. 2:10-CV-00112-JRG, 2013 WL 12158524 (E.D. Tex. Apr. 24, 2013) ............................7

*Moore v. Ashland Chem. Inc.*,
    151 F. 3d 269 (5th Cir. 1998) ....................................................................................6

*Open Text S.A. v. Box, Inc.*,
    No. 13-CV-04910-JD, 2015 WL 349197 (N.D. Cal. Jan. 23, 2015) ......................................17

*Opticurrent, LLC v. Power Integrations, Inc.*,
    No. 17-cv-3597-WHO, 2018 WL 6727826 (N.D. Cal. Dec. 21, 2018)...................................19

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    904 F.3d 965 (Fed. Cir. 2018).............................................................................................2, 15

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010).................................................................................1, 8, 13, 19

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
    No. 17-189-LPS-CJB, 2019 WL 5310220 (D. Del. Oct. 19, 2019)........................................11

*Smartflash LLC v. Apple Inc.*,
    Case Nos. 6:13-CV-446-JRG, KNM, 6:13-CV-448-JRG-KNM, 2014 WL
    7336213 (E.D. Tex. Dec. 23, 2014).................................................................................14, 16

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
    No. 2:16-CV-02322-AB-SKX, 2017 WL 11489792 (C.D. Cal. Nov. 15, 2017) ....................8

*Via Vadis, LLC v. Amazon.com, Inc.*,
    No. 1:14-cv-00813-LY, 2022 WL 23341 (W.D. Tex. Jan. 3, 2022) ........................................6

*Warsaw Orthopedic, Inc. v. Nuvasive, Inc.*,
    No. 08-cv-1512-CAB-MDD, 2016 WL 4536740 (S.D. Cal. June 15, 2016) ..........................19

**Rules**

Federal Rule of Evidence 702..........................................................................................................6

**TABLE OF EXHIBITS**

| Exhibit | Document Title |
|---------|----------------|
| 1 | Excerpts of December 8, 2022 Expert Report of Mr. Jeffrey Andrien |
| 2 | Excerpts of January 11, 2023 Expert Report of Mr. Todd Schoettelkotte |
| 3 | https://www.defense.gov/News/Releases/Release/Article/2706082/department-statement-on-dji-systems/ (last accessed January 31, 2023) |
| 4 | Document produced at DJI000014278 |
| 5 | Excerpts of November 11, 2022 Deposition Transcript of Li Fox |
| 6 | https://media.defense.gov/2022/Oct/05/2003091659/-1/-1/0/1260H%20COMPANIES.PDF (last accessed January 31, 2023) |
| 7 | https://dronedj.com/2022/10/07/dji-dod-drone/ (last accessed January 31, 2023) |
| 8 | Excerpts of January 25, 2023 Deposition Transcript of Mr. Jeffrey Andrien |
| 9 | https://www.dji.com/newsroom/news/dji-has-always-opposed-combat-use-of-civilian-drones-and-is-not-a-chinese-military-company (last accessed January 31, 2023) |
| 10 | Excerpts of December 8, 2022 Expert Report of Dr. William Michalson |
| 11 | https://www.dji.com/newsroom/news/new-independent-audit-of-select-dji-products-successfully-tests-against-national-cybersecurity-and-privacy-protection-standards (last accessed January 31, 2023) |
| 12 | https://www.dji.com/newsroom/news/dji-statement-on-the-us-department-of-defense-chinese-military-companies-list (last accessed January 31, 2023) |
| 13 | https://www.dji.com/newsroom/news/dji-statement-on-military-use-of-drones (last accessed on January 31, 2023) |
| 14 | Excerpts of October 28, 2022 Deposition Transcript of Romsin Oushana |

## I.     Introduction

"[A] reasonable royalty analysis requires a court to hypothesize, not speculate. At all times, the damages inquiry must concentrate on compensation for the economic harm caused by the infringement of the claimed invention." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (citations omitted). As such, "the trial court must carefully tie proof of damages to the claimed invention's footprint in the marketplace," that is, the *value of the technology* in the marketplace. *Id.* (citing *Grain Processing Corp. v. American-Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999)). "Any evidence unrelated to the claimed invention *does not support compensation for infringement but punishes* beyond the reach of the statute." *ResQNet*, 594 F.3d at 869 (emphasis added).

Textron does not seek to honestly value the technology at issue here. Rather, it seeks to try this case based on DJI's citizenship. It seeks to exploit that DJI is a Chinese company, exploit biases, and exploit evidence that "punishes beyond the reach of the statute" in pursuit of punitive damages. *ResQNet*, 594 F.3d at 869. That is not what Section 284 was meant to offer patentees.

Mr. Andrien applies a profit split model that would effectively disgorge DJI of profits because DJI is a Chinese company. █████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████ ██████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[1] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████ This is contrary to the notion that the hypothetical negotiation construct

requires a willing licensor. Nevertheless, recognizing that no company would accept such an

allocation, ██████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████ Mr. Andrien's approach is highly prejudicial, arbitrary, speculative, and

contradicted by the record. His reliance on DJI's Chinese citizenship should be excluded from

his damages analysis. ████████████████████

Not only is Mr. Andrien's methodology unsound for its prejudicial exploitation of DJI's

Chinese citizenship, but it also applies a flawed survey analysis that fails to adequately apportion

between the patented and the non-patented features. █████████████████████████

█████████████████████████████████████████████████

██████████████████████████ As an initial matter, Mr. Andrien's analysis

improperly apportions based on revenues, rather than profits, and thus fails to adequately account

for the reality of DJI's manufacturing and sales efforts. *See Power Integrations, Inc. v. Fairchild

Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018) ("patentee must in every case give

evidence tending to separate or apportion the defendant's profits . . . between the patented feature

and the unpatented features"). Mr. Andrien's apportionment analysis is also flawed as it relies

upon surveys that do not provide relevant insight into the value of the patented technology (e.g.,

they do not place a monetary value on a specific feature or assign a portion of the purchase price

to a specific feature), and that do not demonstrate that any feature drives demand. Such a flawed

survey methodology should be excluded. ███████████████████

Moreover,  compounding the errors of using these surveys in the first place. But this approach is speculative. And the percent allocations that Dr. Michalson and Mr. Andrien assign for "hover" are arbitrary, with any meaningful link between the survey features and the percent allocation "written in invisible ink." For example, ████████████████████████████████. In his supplemental report,[2] Mr. Andrien estimates the value of the "flight performance" feature allocated to "hover" and the '752 patent to be anywhere between 50% and 87.5% based on the fact Dr. Michalson indicated seven out of eight source code modules Textron requested relate to the '752 patent. *See* DI 137-2 ¶ 13. Such vague speculative notions about the relative importance of "hover" and the '752 patent cannot sustain a damages opinion; they should be excluded. ████████████████

## II.   Factual Background

### a.   DJI Is a Private Drone Company With a Staunch Policy Against Having Its Drones Used for Any Military Purpose

DJI is a privately owned and operated company founded in 2006 that creates flying and camera-stabilization systems. Ex. 2 ¶ 27. DJI created the market for drones and is recognized today as the dominant drone brand, with professionals in filmmaking, agriculture, conservation, search and rescue, and energy infrastructure using DJI's UAVs. *Id.* ¶¶ 28, 30-31. Though DJI is a Chinese company, it is not a "Chinese military company," and it does not sell any drones to the Chinese government. *See, e.g.*, Ex. 7; Ex. 9; Ex. 12; Ex. 13; ████████████████████████

---

[2] DJI separately opposes Textron's motion for leave to serve supplemental reports. *See* DI 138.

In 2018, the U.S. Department of Defense issued a "ban on the purchase and use of all commercial off-the-shelf drones, regardless of manufacturer, due to cybersecurity concerns." Ex. 3. This ban included drones sold by DJI.[3] The U.S. Department of Defense explained that, even with this ban on "commercial off-the-shelf drones," the Department of Defense could continue to purchase DJI's drones if that purchase was for "(1) Counter-UAS surrogate testing and training; or (2) Intelligence, electronic warfare, and information warfare operations, testing, analysis, and training." *Id.*

On July 23, 2021, the U.S. Department of Defense released a statement that DJI systems "pose[d] potential threats to national security." Ex. 1 ¶ 25 (quoting Ex. 3). On October 5, 2022, the Department of Defense placed DJI on the blacklist. Ex. 6. Immediately after being placed on the blacklist, DJI denounced the inclusion, explaining "DJI is not a military company in China, the United States, or anywhere else," DJI "has never designed or manufactured military-grade equipment," it "has never marketed or sold its products for military use in any country," and DJI "stands alone as the only drone company to clearly denounce and actively discourage military use of [its] products, including suspending all business operations in Russia and Ukraine to try to keep [its] drones out of the conflict there." Ex. 7; *see also, e.g.*, Ex. 9 ("DJI has always opposed combat use of civilian drones and is not a 'Chinese military company'"); Ex. 12; Ex. 13. Despite DJI's inclusion on the Department of Defense's blacklist, "officials at both the Department of Homeland Security and the Federal Bureau of Investigations acknowledged their staff continue using [DJI] UAVs." Ex. 7.

---

[3] DJI has consistently sought to ensure data security with its drone products, and recently tested successfully against national cybersecurity and privacy protection standards. *See, e.g.*, Ex. 11.

###### b.   Textron Is a Helicopter Company With a Presence In China

Textron is the patent holding company for patents originating with Textron Inc. and/or its subsidiaries, like Bell. Ex. 2 ¶ 24. Bell supplies military and commercial helicopters, tiltrotor aircraft, and related spare parts and services; it does not supply drones. *Id.* ¶ 25. In addition to having customers in the U.S., Textron and Bell do business in China and advertise their presence there. *See, e.g.*, *id.* ¶ 94. For example, Textron's webpage includes a "Textron in China" site that notes Textron has had an office in China since 1998, and over 1,000 current employees in China. *Id.* Bell has also worked with Shaanxi Helicopter, a Chinese company belonging to the Shaanxi Investment Group Company Limited, which sits under the State-owned Assets Supervision & Administration Commission of Shaanxi Province. *Id.* With Shaanxi Helicopter, Bell is seeking to manufacture 100 Bell helicopters for use in China. *Id.* And in November 2022, Bell signed a cooperation agreement with Shaanxi Helicopter. *Id.*

###### c.   Case Background



Two years later, on July 19, 2021, Textron filed this case against DJI, asserting certain accused products infringed Textron's patents. DI 1. During expert discovery, Textron served a damages report (and then a belated supplemental damages expert report subject to briefing over Textron's motion for leave to supplement, *see* DI 137; DI 138) determining a proposed damage

award. As part of that analysis, Mr. Andrien (Textron's damages expert) opined that an income-based approach would be appropriate to determine the value of the asserted technology and what the parties to the hypothetical negotiation would be willing to agree to. ██████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

This determination is based on an unfounded methodology, is contrary to basic principles of damages law, and places bias before the value of the technology.

## III.    Legal Standard

Federal Rule of Evidence 702 creates a "gatekeeping role" for district courts, "tasking them with 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Via Vadis, LLC v. Amazon.com, Inc.*, No. 1:14-cv-00813-LY, 2022 WL 23341, at *1 (W.D. Tex. Jan. 3, 2022) (quoting *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993)). Rule 702 sets forth distinct requirements for the admission of expert testimony: (i) the expert must be qualified, (ii) the opinion must be reliable, and (iii) the expert's opinion must relate to the facts of the case. *See id.*; *see also Moore v. Ashland Chem. Inc.*, 151 F. 3d 269, 276 (5th Cir. 1998). "The reliability prong mandates that expert opinion be grounded in the methods of procedure and science" and "be more than unsupported speculation or subjective belief." *Via Vadis*, 2022 WL 23341, at *1 (quoting *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)); *see also Daubert*, 509 U.S. at 590.

## IV.   Argument

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████  This is the figure used by Mr. Andrien to represent the

alleged "profit" attributable to the patents-in-suit. ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████  Each step in Mr.

Andrien's analysis is methodologically unsound and warrants exclusion. This motion will first

address Mr. Andrien's use of DJI's nationality in his profit split analysis, before addressing his

flawed methodologies in arriving at that profit figure.

### a.   DJI's Chinese Citizenship Is Irrelevant to the Value of the Technology, and Mr. Andrien's Reliance on DJI's Citizenship to Split Profits Is an Unsound and Prejudicial Methodology

The nationality of a party is *not relevant to damages*, much less to any issue presented at

trial. Courts regularly exclude arguments and evidence as to whether a party is a foreign entity as

unfairly prejudicial and irrelevant. *See, e.g.*, *ContentGuard Holdings, Inc. v. Amazon.com Inc.*,

Nos. 2:13-CV-01112-JRG, 2:14-CV-00061-JRG, 2015 WL 11089489, at *2 (E.D. Tex. Aug. 25,

2015) ("The parties shall not introduce any argument, evidence, testimony, insinuation, reference

or assertion denigrating, disparaging, touting, exalting or commenting unnecessarily on the

nationality or place of residence of a party or witness, or otherwise differentiating the nationality

or place of residence of a party or witness from Texas or the United States."); *MobileMedia*

*Ideas, Inc. v. HTC Corp.*, No. 2:10-CV-00112-JRG, 2013 WL 12158524, at *3 (E.D. Tex. Apr.

24, 2013) (excluding suggestion that "a witness is not trustworthy or dishonest based on their

7

language, nationality, ethnicity, or referring to [defendant] as a 'Chinese' company"); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, No. 2:16-CV-02322-AB-SKX, 2017 WL 11489792, at \*7 (C.D. Cal. Nov. 15, 2017) ("Arguments [that are] based on cultural stereotypes are improper and prejudicial."). Yet, Textron's entire damages case is grounded on impermissible stereotypes and biases.

Indeed, Mr. Andrien states that after determining the amount of alleged profit attributable to the patents-in-suit, the parties' relative bargaining positions should apportioned to reflect any imbalances. After that apportionment, ███████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ █████████ Here, however, ██████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████ In doing this, Textron ignores the well-established rule that a party cannot appeal to biases, asking the jury to relegate significant funds to Textron because of the purported risk of doing business with a Chinese company. Such an ask is not grounded in fact, much less in the rules governing damages analyses. Suggesting that DJI's citizenship would have been a relevant consideration at the hypothetical negotiation contradicts the mandate that any "evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute," and it should be excluded. *See ResQNet*, 594 F.3d at 869.

### i. Mr. Andrien's Analysis Improperly Considers DJI's Chinese Citizenship to Justify Effectively Disgorging DJI of Any Profits

In determining the amount of an alleged reasonable royalty owed Textron, Mr. Andrien purports to evaluate the relative bargaining position of the parties at the hypothetical negotiation.



Because *none* of the other factors he identifies support significantly disgorging DJI of profits,[4]

Mr. Andrien *relies heavily* on DJI's Chinese citizenship,

Specifically,

he contends

This

analysis lacks any factual support, is highly speculative, prejudicial, and unreliable, and should

be excluded. *Cf. Droplets, Inc. v. Yahoo! Inc.*, No. 12-cv-03733-JST, 2022 WL 2670163, at *3-4

(N.D. Cal. Jan. 12, 2022) (the expert "does not explain why the factors he identifies 'necessarily

[4]

lead[ ] to the conclusion that the parties would have agreed to a 50/50 split,' and why a 40/60, 30/70, 20/80 or any other split would not have been appropriate. There is simply too great an analytical gap between [the expert's] 50/50 conclusion and the facts he attempts to rely on. Thus, this portion of [his] analysis is inadmissible." (internal citations omitted)).

### ii. DJI Is Not a "Chinese Military Company" and Does Not Sell Drones to the Chinese Military

First, there is *absolutely no evidence* that DJI is a Chinese military company or otherwise sells its products to the Chinese military, either currently or during the time of the hypothetical negotiation (2015). ███████████████████████ Indeed, Mr. Andrien cites to no evidence of any sale to the Chinese military in his reports. And when pressed at his deposition, ████████████████████████████████████████████ ████████████████████████

Instead, Mr. Andrien cobbles together flawed logic to support his notion that DJI is a "Chinese military company." Mr. Andrien opines that, despite there being no evidence showing a relationship between DJI and the Chinese government, ██████████████████████ ██████████████████████████████████████████ ██████████ and the Chinese government denied DJI permission to export source code "for the protection of the security of the State," DI 137-2 ¶ 15. Neither fact supports his "assumption." That the U.S. government blacklisted DJI does not establish DJI as a Chinese military company.[5] DJI vigorously disputes its placement on the blacklist, saying that "it is not a military company in China, the United States, or anywhere else," and that it " has never designed or manufactured military-grade equipment, and has never marketed or sold its products for military use in any

---

[5] Nor does the U.S. government labelling DJI a "Chinese military company" make it so. As discussed, DJI vigorously disputes that characterization. And as the record evidence illustrates, there is simply no connection between DJI and the Chinese military.

country." *See* Ex. 7; Ex. 9; Ex. 12; Ex. 13. Similarly, the Chinese government's reason for why it denied DJI's request to export source code does not demonstrate that DJI is a military company.

████████████████████████████████████████████████████████████████

██████ and thus he cannot opine on the meaning of the language in the Chinese government's denial. But more importantly, Mr. Andrien ignores the fact that in its application to the Chinese government, DJI expressly stated is it not a Chinese military company, checking "no" twice on its application, when probed to explain whether it had any relationship to the Chinese military.

████████████████████; DI 133-2 at TEXTRON_379011. As Mr. Andrien acknowledges, DJI "warrant[ed] that the information provided [in its application] is true." DI 137-2 ¶ 4 (quoting the DJI application). There is *no evidence* showing that DJI is a "Chinese military company." Mr. Andrien's opinions simply do not fit the facts of this case and should be excluded. *Daubert*, 509 U.S. at 590 (explaining the "fit" requirement "goes primarily to relevance," and an expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact issue"); *see also, e.g.*, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 17-189-LPS-CJB, 2019 WL 5310220, at *2 (D. Del. Oct. 19, 2019) ("analysis is not based on a reliable, legally-supportable methodology that fits the facts of the case and must be excluded").

What the evidence instead shows is that DJI is a Chinese company—and nothing more. During his deposition, ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ But this degree of speculation (and frankly bias) cannot support any profit-split analysis. It is the definition of bias, and if true and taken to its logical conclusion, means that every Chinese company is a Chinese military company. Such bald assumptions without underlying factual support cannot offer sound

11

reasoning, much less sound economic reasoning, to support a damage award. Mr. Andrien cannot punish DJI with such a punitive award simply because it is a Chinese company.

### iii.  There is No Indication DJI Was at Risk of Being Blacklisted at the Time of the 2015 Hypothetical Negotiation

Second, there is no indication that DJI was at risk of being blacklisted in 2015, when the hypothetical negotiation would occur. According to Mr. Andrien (applying his book of wisdom analysis), ██████████████████████████████████████████████████ ████████████████████████████████████ But there is *no evidence* showing the blacklist existed in 2015. And when pressed at his deposition, ██████████████████████████████ ████████████████████████████ Mr. Andrien has no special expertise to offer the jury about inclusion on a blacklist. To suggest this would have been a relevant fact for Textron to consider at the hypothetical negotiation is nothing more than speculation. Moreover, there is *no evidence* showing that a purported risk of blacklisting would in fact discourage Textron from negotiating a license with DJI in 2015. ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ the 2018 Department of Defense's ban on the use of commercial off-the-shelf drones, including DJI's drones. Ex. 3. And Textron was not deterred then. Mr. Andrien's analysis is nothing more than speculation and bias at odds with the evidence of record.

### iv.   Regardless, Mr. Andrien's Suggestion that Textron Would be Reluctant to Negotiate with DJI is Belied by the Factual Record

Finally, even if DJI were a Chinese military company at risk of being put on the blacklist in 2015 (which is flawed for the reasons set forth above), ███████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████ Even though DJI is currently on the U.S.

blacklist, consumers in the U.S. are still able to purchase DJI drones, and some U.S. government

entities, including the FBI and Homeland Security, continue to purchase and use DJI drones. *See*

Ex. 7. DJI's products also continue to be sold in the nation's largest retailers, including Apple,

BestBuy, and Amazon. To suggest Textron would be at risk of losing U.S. government business

if it were to negotiate with DJI squarely contradicts the evidence. Moreover, it entirely ignores

that Textron itself has several relationships with China, including the Chinese government. ████

█████████████████████████

Textron's relationship with the U.S. government has not scared it away from itself having

relationships with the Chinese government and Chinese companies; ███████████████████

██████████████████████████████████████████████████████████████████████

███████████████████ █████████. Mr. Andrien's analysis must be excluded. DJI's Chinese

citizenship, its eventual inclusion on the blacklist, and any purported impact on the hypothetical

negotiation is *not* something ripe for cross-examination in this case. It is *not* something to be

presented to the jury, for it obfuscates the relevant task of considering the "claimed invention's

footprint in the marketplace." *See ResQNet*, 594 F.3d at 869. Rather, Textron's attempt to litigate

---

[6] ████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
██████████████████████████████████████

this case based on DJI's Chinese citizenship contradicts what the judicial system in this country

stands to protect: right to trial by a fair and impartial jury. *See Magnivision , Inc. v. Bonneau Co.*,

115 F.3d 956, 958 (Fed.Cir. 1997) ("A trial need not be perfect; it must, however, be fair."); *id.*

("Rules of Evidence require that the issues presented at trial be relevant to the matter in dispute,

and be supported by admissible evidence that is free of unfair prejudice" (citing *Daubert*, 509

U.S. 579)).

### b. Mr. Andrien's *Georgia-Pacific* Factor 13 Analysis is Flawed, Unreliable, and Speculative, and It Should be Excluded

In pursuing a *Georgia-Pacific* analysis to determine the alleged profit attributable to the

invention, Mr. Andrien abruptly dismisses the market and cost approaches as relevant indicators

for the value of the asserted technology, and relies only on an income-based approach.



This methodology is flawed for several independent reasons and should

be excluded.

### i. Mr. Andrien's Income Approach Fails to Adequately Apportion Between the Patented and Non-Patented Features

Mr. Andrien's income-approach should be excluded because it fails to adequately

apportion between patented features and non-patented features. *See, e.g.*, *Smartflash LLC v.*

*Apple Inc.*, Case Nos. 6:13-CV-446-JRG, KNM, 6:13-CV-448-JRG-KNM, 2014 WL 7336213,

at *2-3 (E.D. Tex. Dec. 23, 2014). First, as indicated above,

███ This analysis improperly apportions based on revenues, rather than on profits, and fails to adequately account for the realities of DJI's manufacturing and sale efforts. *Power Integrations*, 904 F.3d at 977 ("patentee must in every case give evidence tending to separate or apportion the defendant's profits . . . between the patented feature and the unpatented features"). ████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███ Mr. Andrien's contrary approach is flawed and should be excluded.

Second, the surveys Mr. Andrien relies upon do not provide relevant insight into the value of the patented technology or demonstrate that any feature drives demand, and therefore cannot be used to apportion between the patented and the unpatented features. ████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

15

██████████████████████████ The Eastern District of Texas rejected a damages expert's similar approach in *Smartflash*. 2014 WL 7336213, at *2-3. There, the expert's analysis took the share of survey respondents who said the accused infringing feature motivated them to purchase the accused device and multiplied it by the revenues for the devices. *Id.* The district court found this flawed methodology failed to adequately "apportion between the contributions of patented features and other features" because the surveys relied on asked whether a feature motivated the purchasing decision and multiple features could have been motivators. *Id.* In the district court's view, the surveys "did nothing to distinguish those features as the sole motivating factor" for purchasing decisions, and as such, the expert's analysis failed to adequately apportion and was excluded. *See id.* The same result is required here.

> ### ii. Mr. Andrien's 50% (or 87.5%) Allocation of Survey Features to "Hover" and the '752 Patent Is Arbitrary and Speculative, and It Should be Excluded

Finally, none of the surveys that Mr. Andrien relies on identifies "hover," the alleged invention of the '752 patent, as a relevant purchasing decision. *See* Ex. 1 ¶ 118. As a result, Dr. Michalson and Mr. Andrien concoct a way to form-fit "hover" into one (or more) of the features identified in the DJI surveys. *Id.* █████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████ This is nothing more than pure speculation. It is not reliable and lacks any legitimate means for testing or assessing how well it reflects the purported value of the '752 patent.

Without providing any further analysis of his own, in one short paragraph, Mr. Andrien uses this arbitrary ████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

Dr. Michalson and Mr. Andrien then repeat this same approach in supplemental expert reports. Dr. Michalson contends that DJI's characterization of irrelevant source code as related to "flight performance" in its application to the Chinese government seeking to export source code *somehow gives new insight* into what Textron's own '752 patent covers. DI 137-1. And, now, for the first time, Dr. Michalson is able to say the survey feature "flight performance" is relevant to assign value to the '752 patent. *See id.* Dr. Michalson and Mr. Andrien then opine that anywhere between 50% and 87.5% of the "flight performance" survey feature should be allocated to the '752 patent based on the fact that Dr. Michalson thinks descriptions of seven out of eight source code modules relate to the '752 patent. *Id.* ¶¶ 3-8; DI 137-2 ¶ 13.

The link, if any, between the survey features and the 50% (and 87.5%) allocation both Dr. Michalson and Mr. Andrien invoke is "written in invisible ink." *See, e.g.*, *Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 349197, at *5-6 (N.D. Cal. Jan. 23, 2015) ("Rather than spelling out the steps she took to go from the data to the royalty rate opinion, Holt cites her

'experience'—an abstraction not visible to the eyes of the Court, the jury, and opposing counsel, or testable in the crucible of cross-examination."); *see also Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 887-89 (E.D. Wis. 2010). Dr. Michalson's and Mr. Andrien's method of cherry-picking survey features and saying (as a matter of "expert" opinion) that those features are attributable to hover is no more than a "black box into which data is fed at one end and from which an answer emerges at the other." *See Lawrence v. Raymond Corp.*, No. 09-cv-1067, 2011 WL 3418324, at *7 (N.D. Ohio Aug. 4, 2011), *aff'd*, 501 F. App'x 515 (6th Cir. 2012). Neither the jury nor DJI can test how the pieces fit together or how the data derives the 50% (and 87.5%) allocation Textron's experts have put forth. This is not the "reliable and tangible, not conjectural or speculative" evidence required for damages analyses. *LaserDynamics Inc. v. Quanta Comp. Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012).

Courts regularly exclude subjective damages percentages. *See Koninklijke Philips Elecs. N.V. v. Zoll Lifecor Corp.*, No. CV 12-1369, 2017 WL 3140798, at *4 (W.D. Pa. July 25, 2017) (excluding damages expert's 50% reduction because the expert was "unable to articulate any precise basis for the 50% reduction during his deposition, and it seems fair to say that, based on his report and his deposition, that was an entirely subjective percentage that [the expert] applied based on materials he had reviewed"); *Atlas IP, LLC v. Medtronic, Inc.*, No. 13-CIV-23309, 2014 WL 5741870, at *4–5 (S.D. Fla. Oct. 6, 2014) (excluding based on failure to explain how calculated 70% apportionment rate, where the expert pointed to "vague qualitative notions" of "relative importance" of materials on website). So too should the Court dismiss Mr. Andrien's arbitrary 50% (and 87.5%) allocation here.

**c.  Mr. Andrien Fails to Identify the Correct Parties to the Hypothetical Negotiation and His Opinion Should Be Excluded**

Mr. Andrien's reasonable royalty analysis should also be excluded because he fails to identify the correct parties to the hypothetical negotiation. "A 'reasonable royalty' derives from a hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet*, 594 F.3d at 868. The hypothetical-negotiation construct "assumes infringement and validity of the patents and willingness of the parties to negotiate an agreement." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 771 (Fed. Cir. 2014). "[T]he analysis must begin with the proper parties in mind." *Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-cv-3597-WHO, 2018 WL 6727826, at *9 (N.D. Cal. Dec. 21, 2018) (striking report of damages expert for relying on incorrect parties to hypothetical negotiation); *Warsaw Orthopedic, Inc. v. Nuvasive, Inc.*, No. 08-cv-1512-CAB-MDD, 2016 WL 4536740, at *5 (S.D. Cal. June 15, 2016) (same).

Here, Mr. Andrien opines that there would be two hypothetical negotiations,



. As the manufacturer, it would have been party to the hypothetical negotiation, and Mr. Andrien's failure to include it supports the exclusion of his opinion. *Opticurrent*, 2018 WL 6727826, at *9; *Warsaw*, 2016 WL

---

[7] DJI Technology Inc. is not a party to the litigation. Nor is any other U.S. based DJI entity.

[8] Named as Shenzen Dajiang Baiwang Technology Co. Ltd. in the Amended Complaint.

4536740; *Daedalus Blue LLC v. SZ DJI Tech. Co.*, W-20-CV-00073-ADA, 2022 WL 831619, at

*7-8 (W.D. Tex. Feb. 24, 2022).

## V.    Conclusion

DJI respectfully requests the Court exclude Mr. Andrien from offering expert testimony

because he improperly relies upon DJI's Chinese citizenship to effectively disgorge DJI of any

profits, he conducts a flawed *Georgia-Pacific* factor 13 analysis based on, among other things, a

flawed survey analysis, and he fails to consider the correct parties to the hypothetical negotiation.

DATED: January 31, 2023

/s/ Benjamin R. Schlesinger
Qingyu Yin (*pro hac vice*)
J. Michael Jakes (*pro hac vice*)
Sydney Kestle (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER, LLP**
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000
qingyu.yin@finnegan.com
mike.jakes@finnegan.com
sydney.kestle@finnegan.com

Benjamin R. Schlesinger (*pro hac vice*)
Robert K. High (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER, LLP**
271 17th St. NW Suite 1400
Atlanta, GA 30363-6209
(404) 653-6400
benjamin.schlesinger@finnegan.com
robert.high@finnegan.com

Jacob A. Schroeder (*pro hac vice*)
Jinwoo Kim (*pro hac vice*)
Yanyi Liu (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER, LLP**
Stanford Research Park

3300 Hillview Avenue, 2nd Floor
Palo Alto, CA 94304
(650) 849-6600
jacob.schroeder@finnegan.com
jinwoo.kim@finnegan.com
yanyi.liu@finnegan.com

John P. Palmer
State Bar No. 15430600
John A. "Andy" Powell
State Bar No. 24029775
USPTO Reg. No. 71,533
Jacqueline P. Altman
State Bar No. 24087010
**NAMAN, HOWELL, SMITH & LEE PLLC**
400 Austin Avenue, Suite 800
Waco, Texas 76701
Telephone: 254.755.4100
Facsimile: 254.754.6331
palmer@namanhowell.com
powell@namanhowell.com
jaltman@namanhowell.com

*Attorneys for Defendants SZ DJI Technology
Co., Ltd., DJI Europe B.V., SZ DJI Baiwang
Technology Co. Ltd., and iFlight Technology
Company Ltd.*

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Defendants met and conferred with counsel for Plaintiff. Counsel for Plaintiff indicated that Plaintiff opposes this motion, and the parties were not able to reach agreement on this matter.


Dated: January 31, 2023                                    /s/ *Benjamin R. Schlesinger*
                                                                       Benjamin R. Schlesinger

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 31, 2023, Defendants' Motion to Exclude Opinions and Testimony of Plaintiff's Expert Jeffrey Andrien  and supporting documents Exhibits 1-14 were served via electronic mail to all counsel of record who have appeared in this case per Local Rule CV-5. The undersigned hereby further certifies that on January 31, 2023, the proposed order was served via electronic mail to all counsel of record who have appeared in this case per Local Rule CV-5.


/s/ *Benjamin R. Schlesinger*
Benjamin R. Schlesinger