```
1                  UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
2                        WACO DIVISION

3  TEXTRON INNOVATIONS, INC.) Docket No. WA 21-CA-740 ADA
                            )
4  vs.                      ) Waco, Texas
                            )
5  SZ DJI TECHNOLOGY CO.,   )
   LTD.                     ) December 6, 2022
6

7      TRANSCRIPT OF DISCOVERY HEARING VIA VIDEOCONFERENCE
               BEFORE THE HONORABLE DEREK T. GILLILAND
8

9  APPEARANCES:

10 For the Plaintiff:       Mr. Harrison Rich
                            Baker Botts
11                          2001 Ross Avenue, Suite 900
                            Dallas, Texas 75206
12
                            Mr. Mark A. Speegle
13                          Baker Botts, LLP
                            98 San Jacinto Boulevard,
14                          Suite 1500
                            Austin, Texas 78701
15
                            Mr. Mark D. Siegmund
16                          Steckler, Wayne, Cherry
                            & Love, PLLC
17                          8416 Old McGregor Road
                            Waco, Texas 76712
18
                            Mr. Kevin J. Meek
19                          McDermott, Will & Emery, LLP
                            303 Colorado Street, Suite 2200
20                          Austin, Texas 78701

21 For the Defendant:       Mr. Benjamin R. Schlesinger
                            Finnegan, Henderson, Farabow,
22                          Garrett & Dunner, LLP
                            271 17th Street N.W., Suite 1400
23                          Atlanta, Georgia 30363

24

25
```

```
 1  (Proceedings Continued:)

 2  For the Defendant:           Mr. Jacob Schroeder
                                 Finnegan, Henderson, Farabow,
 3                               Garrett & Dunner, LLP
                                 Stanford Research Park
 4                               3300 Hillview Avenue, 2nd Floor
                                 Palo Alto, California 94304
 5
                                 Mr. Qingyu Yin
 6                               Finnegan, Henderson, Farabow,
                                 Garrett & Dunner LLP
 7                               901 New York Avenue, NW
                                 Washington, D.C. 20001
 8

 9                               Mr. John P. Palmer
                                 Naman, Howell, Smith & Lee
10                               P.O. Box 1470
                                 Waco, Texas 76703
11

12  Transcriber:                 Ms. Lily Iva Reznik, CRR, RMR
                                 501 West 5th Street, Suite 4153
13                               Austin, Texas 78701

14

15

16

17

18

19

20

21

22

23

24

25  Proceedings reported by digital sound recording,
    transcript produced by computer-aided transcription.
```

```
 1                 (Proceedings commence at 9:29 a.m.)
 2            THE COURT:  All right.  Good morning, everybody.
 3            We're here for a discovery dispute, and we're
 4  going to start by having Ms. Copp call the case.
 5            THE CLERK:  Yes, your Honor.
 6            Calling Case No. WA-21-CV-740, styled, Textron
 7  Innovations, Incorporated vs. SZ DJI Technology Company,
 8  Limited, et al.  Called for a discovery hearing.
 9            THE COURT:  All right.  Could I get announcements
10  starting with the plaintiff.
11            MR. SIEGMUND:  Good morning, your Honor.
12            This is Mark Siegmund on behalf of Plaintiff
13  Textron Innovations, Incorporated.  With me this morning
14  is Harrison Rich and Mark Speegle with Baker Botts, and
15  Kevin Meek with McDermott.  Also in attendance is Rus
16  Holloway, deputy general counsel with Bell Textron.  And
17  Mr. Rich will be the main speaker this morning, your
18  Honor.
19            THE COURT:  All right.  Very good.  Well, good to
20  see you, Mr. Siegmund, and team.  And especially thanks,
21  Mr. Holloway, for joining us.  I always appreciate it when
22  client representatives attend.
23            Announcements for defendant, please.
24            MR. PALMER:  Good morning, Judge.
25            This is John Palmer with Naman Howell.  I am --
```

1  probably this is as much you're going to hear from me.
2  But Ben Schlesinger at Finnegan will be speaking primarily
3  and we represent the defendant.
4          THE COURT:  Okay.  Very good.  Good to see you,
5  Mr. Palmer, Mr. Schlesinger.  I think I've organized my
6  windows to where the two main speakers are reasonably
7  close to the camera, so it looks like I'm looking at you
8  to the extent it does.
9          All right.  So with this, I've read through the
10 parties' briefing on it.  I've kind of got an idea of what
11 I want to do but let me -- I'll give both parties an
12 opportunity to address the issue.  And I'm curious, when
13 are expert reports due in the case?  I assume those have
14 not been done yet, but I haven't pulled the schedule to
15 see.
16         MR. RICH:  Your Honor, good morning.  Harrison
17 Rich for the Plaintiff Textron.
18         Expert reports are due in about 48 hours.  So we
19 are right at the expert report deadline.
20         THE COURT:  Got it.  Got it.  Okay.  And if you
21 want, Mr. Rich, go ahead and walk me through the
22 chronology and what -- I guess, Textron wants any
23 non-infrin -- any non-infringing alternative struck or is
24 there some subcategory?
25         MR. RICH:  Your Honor, we are asking the Court to

1  preclude DJI from relying on any NIAs or evidence or
2  supporting facts beyond what is literally listed in their
3  supplemental interrogatory response to Interrogatory No.
4  7.
5          THE COURT:  And that supplemental response was
6  provided, is that the one that was done on the 17th?
7          MR. RICH:  Correct, your Honor.  It was one hour
8  into the deposition of their corporate representative on
9  NIAs.
10         THE COURT:  Go ahead.
11         MR. RICH:  Your Honor, I was just going to say,
12 I'm happy to walk you through the chronology if the Court
13 would find that helpful.
14         THE COURT:  Yeah.  Go ahead, just quickly.
15         MR. RICH:  Okay.  Thank you, your Honor.  May I
16 share my screen with the Court?
17         THE COURT:  Certainly.
18         MR. RICH:  All right.  Your Honor, can you see
19 the screen?
20         THE COURT:  I can.  Thank you.
21         MR. RICH:  All right.  So, your Honor, as you
22 know, this dispute presents a straightforward question
23 about whether DJI should get to rely on evidence or
24 testimony on non-infringing alternatives that it failed to
25 disclose in its interrogatory response, despite having

1  previously agreed to supplement that interrogatory.  And
2  we submit that the answer to that question should be no
3  because DJI should have told us about the NIAs back in
4  August.  And because we didn't get to investigate or test
5  the NIAs against any witnesses, DJI should be held to what
6  is literally in their interrogatory response.  And DJI's
7  expert should not be allowed to backfill facts about NIAs
8  or provide new NIAs.
9        And we provided your Honor with a timeline in our
10 dispute chart that really highlights the problem with what
11 DJI did here.  And I'm just going to touch on a few of the
12 highlights from that timeline.
13       The dispute originates back in June of 2022 when
14 we served our Interrogatory No. 7, asking for DJI's NIAs
15 and supporting facts.  And the reason we served that first
16 rog early on, your Honor, is an important one.  We wanted
17 to know what those NIAs were so we could adequately
18 prepare our case, including through conducting necessary
19 discovery about those NIAs and facts, whether that be
20 through DJI's witnesses or third parties.  And DJI punted
21 on its interrogatory response to expert discovery without
22 providing any substantive response.
23       So on August 12th of 2022, we've met and
24 conferred with DJI and DJI agreed to provide a
25 supplemental response to our interrogatory.  That, too, is

1   important because the major premise of DJI's argument is
2   that the parties agreed to defer responding to that
3   interrogatory until expert discovery.  And that's false.
4   Exhibit 1 to our dispute chart proves that point.  And I
5   am putting Exhibit 1 here on this slide.  This is our
6   summary in all of the meet-and-confer and you can see from
7   the highlighted language, our summary reflects the
8   parties' agreement that DJI would supplement its response
9   if it developed a contention that there were NIAs to any
10  asserted patent, and that's in August of 2022.
11          And if there were any doubt about that agreement,
12  I'm showing DJI's response to our e-mail here on this
13  slide, and there's a lot of text here and not a lot of
14  highlighting and there's a reason there's no highlighting,
15  and that's because they didn't dispute our agreement.
16          So now, moving to the 30(b)(6) process, we saw
17  that DJI flip-flopped four times on whether it would
18  designate a witness; and one of those four times occurred
19  on November 9th, when DJI revoked the designation of DJI
20  witness, Mr. Shang.  Not surprisingly, I went ahead and
21  asked Mr. Shang about NIAs, and he didn't have any
22  knowledge.  He wasn't familiar with the patent or anything
23  about infringement.
24          So we then asked DJI's next technical 30(b)(6)
25  witness, Mr. Zhang, on November 14th about NIAs.  And when

1  we asked Mr. Zhang about NIAs, he said that he had
2  knowledge.  So we asked the natural followup, well, what's
3  that knowledge?  And DJI's counsel asked for a break to
4  talk with the witness to explore privilege issues.  But
5  when we came back from that break, DJI's counsel shut down
6  the deposition, not on the basis of privilege but on the
7  basis that we were a couple minutes over our allotted
8  time.  And that's what the question pending and that's a
9  bit shocking from our perspective because the break was
10 supposed to be to discuss privilege and no privilege was
11 asserted.  And DJI makes a big deal about how we were a
12 few minutes over our time, but I don't think that's quite
13 right.
14         We had a 30(b)(1) notice out and this was also a
15 30(b)(6) witness, so we had more than 10 hours.  And
16 because DJI chose the location in China where nobody could
17 get to, we had to take these depositions remotely with two
18 translators overnight.  So I think it's entirely unfair to
19 cut off the deposition in the way they did.
20         Now, when we move on to the last 30(b)(6)
21 designee, Mr. Ai, on November 16th and 17th, we got his
22 designation the day before his November 17th deposition.
23 So for context, as of the start of this deposition, DJI
24 had never before supplemented its response to the NIA
25 interrogatory or otherwise told us that one was coming.

1       So I started my questioning of Mr. Ai on November
2  17th and was pretty shocked when I saw an e-mail after the
3  deposition started that supplemented their interrogatory
4  response with 29 different NIAs.  But that rog response
5  didn't provide anything beyond a generic listing of the
6  NIAs.  There were no supporting facts.
7       As you can imagine, it's highly prejudicial to
8  try to depose somebody on NIAs when you receive the
9  disclosure for the first time during the deposition
10 itself.  But I went ahead and asked Mr. Ai about NIAs,
11 anyways, and Mr. Ai testified that he didn't have any
12 knowledge about NIAs.  And I went ahead and put their
13 supplemental response in front of them, and as you see at
14 the bottom of this slide, he said he'd never seen it
15 before.  And I went into detail on those supplemental
16 responses and I asked him if he had any knowledge about
17 any of them, and he said he didn't have any knowledge.
18      So with DJI's corporate testimony on November
19 17th being that it had no knowledge of NIAs, I was ready
20 to conclude the deposition.  Despite DJI's dispute chart
21 saying that we had used our five hours, I had about 10
22 minutes left.  And I told DJI's counsel that I'm ready to
23 wrap up during a break and DJI's counsel wanted to break
24 for the night.
25      DJI did not tell me that they were going to have

1  some closed-doors talks between Mr. Ai and Mr. Shang and
2  Zhang.  But the next day, on November 18th, I received an
3  e-mail from DJI's counsel telling me to re-ask the
4  questions about NIAs.  But given that we had already
5  received their corporate testimony on this issue, we
6  declined to cover the same ground we already covered.  We
7  wrapped up the deposition of Mr. Ai, our questioning, and
8  DJI's counsel then conducted a lengthy re-direct on NIAs
9  to draw out facts that weren't in the interrogatory
10 response.
11         So this re-direct was the first time we'd ever
12 heard them.  And the basis of Mr. Ai's changed testimony
13 came from Mr. Shang and Zhang.  Those were the guys that
14 told us they either didn't have knowledge or we were
15 prevented from questioning them when DJI shut down the
16 deposition.  So it's pretty unfair to backfill Mr. Ai's
17 lack of knowledge with these guys.  That's just not how
18 the 30(b)(6) process should work.
19         Ultimately, your Honor, this entire course of
20 conduct has been very prejudicial to us.  We tried early
21 on to get the information and were blind-sided with late
22 disclosures from DJI and a redirect on the very last day
23 of discovery.  We've had no chance to conduct necessary
24 discovery into NIAs.  And we have our expert reports, as I
25 mentioned, due in 48 hours, so there's no time for further

1  discovery.
2          DJI has repeatedly said that it wants to fight on
3  the merits, but, frankly, your Honor, we've seen a pattern
4  of behavior from DJI ranging from the source code dispute
5  we had before your Honor now to this where we're fighting
6  with our hands tied behind our back and a blindfold on.
7  The playing field just needs to be level, and we request
8  that your Honor preclude DJI from relying on any evidence
9  or testimony beyond what is literally listed in its
10 interrogatory response.  Thank you, your Honor.
11         THE COURT:  Okay.  Thank you, Mr. Rich.
12         Is it Mr. Schlesinger?  Would you like to
13 respond?
14         MR. SCHLESINGER:  Yes, your Honor.  Mr. Rich,
15 would you mind not sharing your screen?
16         MR. RICH:  Yes.  I'm trying to find the button
17 that takes that down.  I apologize.  Here we go.
18         MR. SCHLESINGER:  Okay.  Thank you.
19         Yes, your Honor.  I mean, first off, what Textron
20 is trying to do is exclude sworn testimony that answers
21 questions that it asked on non-infringing alternatives
22 that a sworn corporate designee provided.  I want to start
23 first with the alleged agreement we had about
24 non-infringing alternatives.
25         What we agreed and what we discussed is that

1  contention responses were going to be deferred until
2  expert reports.  And if I could show your Honor my screen
3  as an example.  May I share my screen, your Honor?
4           THE COURT:  Certainly.  Yeah.
5           MR. SCHLESINGER:  This is an example of just one
6  of the Textron's interrogatories.  In Exhibit A, we asked
7  about what products they have that they allege cover the
8  patents that they provide, and what they provided is,
9  we'll defer answering this interrogatory until the
10 forthcoming expert reports.  That's what the parties
11 discussed.  What we discussed potentially amending for was
12 if there is specific facts that come to light.  Not expert
13 testimony, not contentions.
14          But Textron continued to push us to provide all
15 of these details.  And the agreement also is only when
16 those contentions were -- if they were created.  And so,
17 we did provide that.  We provided that in an interrogatory
18 response.  Yes, it was on the last day of discovery just
19 like Textron provided many interrogatory responses on the
20 last day of discovery, as well.
21          And we did provide a witness.  Mr. Zhang and Mr.
22 Shang were not the corporate designees for non-infringing
23 alternates.  Mr. Ai was and we provided his -- we put him
24 up and he answered the questions he could the first night.
25 He couldn't provide all the answers, so he went and

1  discussed it with colleagues so that he could provide the
2  information Mr. Rich asked.  Now, that was provided a mere
3  day later and during the deposition -- we agreed to break
4  these depositions into two five-hour depositions.  As for
5  Mr. Rich saying that he gets more than 10 hours with a
6  witness, I don't know where that comes from because we
7  always had an agreement that they would get 10 hours,
8  which is more than what they're actually provided under
9  the rules.
10           And again, we were being transparent.  We wanted
11  to provide them a notice that he did learn this additional
12  information.  That's why we sent the e-mail so that they
13  knew that and knew that walking into the deposition.  And
14  so, when he -- Mr. Rich began the deposition, he
15  specifically asked about that meeting, asked what he
16  talked about, and that's the information they're now
17  seeking to exclude and they appear to be even going
18  further.  But the parties never had an agreement that
19  expert testimony would be provided during fact discovery
20  but just facts, and that there's simply no prejudice here.
21  They've had plenty of time to ask the witness about the
22  questions.  What they're really complaining about is that
23  they had to potentially re-ask an hour of questions when
24  they had over three-and-a-half hours left on the record.
25           There's just simply no prejudice.  If they're

1  worried about the expert report that's due in 48 hours,
2  there's time to push that back that rebuttal expert
3  reports are not due till January 11th.  So if they need
4  more time, we'd be willing to accommodate that.  Simply,
5  Textron doesn't like what it heard, but we should address
6  this case on the merits, not on discovery fights, your
7  Honor.  Thank you.
8            THE COURT:  Okay.  Here's what I'm going to do
9  since we're getting into, yeah, essentially the striking
10 of what's going to be the realm of experts.  I'm not
11 inclined to address that as a discovery dispute per se.
12 It's not necessarily directing production or ruling on
13 withholding of documents.  There's definitely some serious
14 questions about the timing and disclosure of the
15 information.  But to make a ruling on that I think is more
16 appropriately done with full briefing in the form of a
17 motion to strike or a Daubert motion rather than as a
18 discovery dispute.
19            So I've jotted down some pretty good notes.  For
20 future reference for myself and at this time, what I'm
21 going to do, Mr. Rich, is deny Textron's request without
22 prejudice, and to the extent that it needs to be addressed
23 in the form of a Daubert motion or motion to strike when
24 expert testimony you think exceeds what's stated or what
25 was provided or properly disclosed during fact discovery,

1  you know, then I think that's more appropriately addressed
2  with the motion to strike or a Daubert motion.
3          Because as -- given the number of exhibits and
4  the type of information this is -- I think exceeds the
5  discovery dispute and is a pretty in-depth -- requires a
6  pretty in-depth analysis.  So for today, I'm going to deny
7  the requested relief obviously without prejudice to
8  re-filing the same language in the form of a motion, be a
9  Daubert motion to strike or others.
10         And then, with regard to expert disclosure
11 deadlines, I assume that's something the parties can work
12 out if you think you need more time, so I'm not going to
13 address that today.
14         Does that, Mr. -- I'll start with you, Mr. Rich.
15 Do you have any questions for me about that or any other
16 issues we need to address this morning?
17         MR. RICH:  No, your Honor.  I think I understand
18 that we can revisit this after they serve their opening
19 report on NIAs.
20         THE COURT:  Correct.
21         And, Mr. Schlesinger, or anybody else on behalf
22 of DJI, Mr. Palmer that any other questions or anything
23 else we need to address today?
24         MR. SCHLESINGER:  No, your Honor.  Thank you.
25         THE COURT:  All right.  Thank you very much.  I

1  think we'll on this one, I'll just probably enter a minute
2  entry, won't do a formal order, just saying that the
3  requested relief is denied without prejudice so the
4  parties do not need to submit a written order or anything
5  like that.
6          All right.  And with that, thank you all very
7  much and we will be adjourned.
8          MR. PALMER:  Thank you, your Honor.
9          MR. SIEGMUND:  Thank you, Judge.
10         MR. SCHLESINGER:  Thank you, your Honor.
11         (Proceedings conclude at 9:47 a.m.)

1
2
3                    REPORTER'S CERTIFICATE
4
5     I, LILY I. REZNIK, DO HEREBY CERTIFY THAT THE FOREGOING
6  WAS TRANSCRIBED FROM AN ELECTRONIC RECORDING MADE AT THE
7  TIME OF THE AFORESAID PROCEEDINGS AND IS A CORRECT
8  TRANSCRIPT, TO THE BEST OF MY ABILITY, MADE FROM THE
9  PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, AND THAT THE
10 TRANSCRIPT FEES AND FORMAT COMPLY WITH THOSE PRESCRIBED BY
11 THE COURT AND JUDICIAL CONFERENCE OF THE UNITED STATES,
12 ON THIS 8th DAY OF DECEMBER, 2022.
13
14
15                          *Lily Iva Reznik*
16                          ~~~~~~~~~~~~~~~~~~~~~~~~
                            *LILY I. REZNIK, CRR, RMR*
17                          *Official Court Reporter*
                            *United States District Court*
18                          *Austin Division*
                            *501 West 5th Street, Suite 4153*
19                          *Austin, Texas 78701*
                            *(512) 391-8792*
20                          *SOT Certification No. 4481*
                            *Expires: 1-31-25*
21
22
23
24
25